NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DEBORAH COSMAN, as Personal )
Representative of the Estate of Wanda )
Rodriguez, Deceased, )
          )
         Appellant, )
          )
v. ) Case No. 2D13-3734
          )
JOSEPH RODRIGUEZ, )
          )
         Appellee. )
_____ )

Opinion filed December 17, 2014.

Appeal from the Circuit Court for Lee
County; Joseph C. Fuller, Jr., and Jay
Rosman, Judges.

Matthew A. Linde of Matthew A. Linde,
P.A., Fort Myers, for Appellant.

Bradley S. Donnelly of Treiser Collins,
PL, Naples, for Appellee.

NORTHCUTT, Judge.

        After nearly fifty years of marriage, Joseph Rodriguez shot and killed his

wife, Wanda. Although he claimed his wife's death was a suicide, Rodriguez was

convicted of second-degree murder and sentenced to life in prison. In this appeal

Deborah Cosman, the personal representative of Wanda Rodriguez's estate, challenges

an adverse final judgment in the wrongful death action against Joseph Rodriguez. We reverse and remand for a new trial.

Cosman was Wanda Rodriguez's child from a previous relationship. After the murder, she was appointed as the personal representative of her mother's estate, and in that capacity she filed a wrongful death action against Rodriguez. In a third amended complaint, Cosman sought damages from Rodriguez on behalf of the estate and for herself individually. The circuit court granted Rodriguez's motion to dismiss Cosman's individual claim for damages, ruling that Rodriguez was a surviving spouse and that Cosman, an adult child, was precluded from bringing a survivor's claim.

Cosman then filed a fourth amended complaint alleging wrongful death and seeking damages on behalf of the estate only. Prior to trial, the parties stipulated that the Estate would not seek compensatory damages, and the case went to trial on the sole issue of punitive damages. The jury returned a zero verdict. As we explain later in this opinion, we reverse the final judgment on the Estate's claim due to certain evidentiary rulings, and we remand for a new trial.

We first address the viability of Cosman's individual claim for damages. Rodriguez argued that he was Wanda's surviving spouse and that, therefore, an adult child such as Cosman did not have a survivor's claim under the Wrongful Death Act, sections 768.16-.26, Florida Statutes (2009). Cosman countered that Rodriguez's act of murder precluded his claim to surviving spouse status by operation of the "slayer statute," section 732.802, Florida Statutes (2006), which prevents a wrongdoer from profiting by such a crime. We agree that when the pertinent statutes are read together,

Rodriguez must be treated as if he predeceased his wife, thereby permitting Cosman's damages claim as a survivor.

The Wrongful Death Act provides a right of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . , and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued." § 768.19. The Act manifests the state's public policy to shift the loss from the survivors to the wrongdoer; the Act is remedial and must be liberally construed. § 768.17.

The wrongdoer is liable for "damages as specified in this act." § 768.19. Survivors may recover "the value of lost support and services." § 768.21(1). A surviving spouse may recover "for loss of the decedent's companionship and protection and for mental pain and suffering." § 768.21(2). "Minor children of the decedent, and all children of the decedent if there is no surviving spouse, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering . . . ." § 768.21(3) (emphasis added). Although not listed in the statute, punitive damages may be recovered for a wrongful death. Martin v. United Sec. Servs., Inc., 314 So. 2d 765, 767 (Fla. 1975).

The circuit court ruled that Cosman could not recover because Rodriguez was Wanda's surviving spouse. See § 768.21(3). In reaching this conclusion, the circuit court failed to apply section 732.802, which states in pertinent part:

> (1) A surviving person who unlawfully and intentionally kills . . . the decedent is not entitled to any benefits under the will or under the Florida Probate Code, and the estate of the decedent passes as if the killer had predeceased the decedent. Property appointed by the will of

the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.

. . . .

(4) Any other acquisition of property or interest by the killer, including a life estate in homestead property, shall be treated in accordance with the principles of this section.

Early on, this statute addressed only a killer's right to property passing by intestacy or will. Prudential Ins. Co. of Am., Inc. v. Baitinger, 452 So. 2d 140, 141 (Fla. 3d DCA 1984). But in 1982 the legislature dramatically expanded the statute to prevent a killer from obtaining property or interests outside the decedent's estate. Id. The 1982 amendments added the catchall provision in subsection (4), quoted above. Ch. 82-71, § 1, at 186, Laws of Fla. "This provision clearly illustrates the legislative intent to broaden the scope of the statute as far as possible so that courts would no longer have to rely solely on equitable principles to prevent a killer from profiting from his action." 452 So. 2d at 142 n.4.

The Florida Supreme Court previously had resorted to equitable principles when, having determined that the then-existing version of this statute applied only to inheritances, it nevertheless held that the murderer of an insured under a life insurance policy could not claim as a beneficiary of the policy. Carter v. Carter, 88 So. 2d 153 (Fla. 1956). In a scenario closer to that of the instant case, the Supreme Court of Georgia invoked equitable principles to allow a wrongful death action by the parent of a deceased son who was murdered by his surviving spouse. Carringer v. Rodgers, 578 S.E.2d 841 (Ga. 2003). The Georgia court explained that the murdering spouse must be treated as predeceased to avoid "the absurd result and 'legal impossibility' of the wrongdoer having to sue herself to recover for the wrongful death." Id. at 844-45. The

- 4 -

court also noted that the purpose of the wrongful death laws would be subverted if the killer could render herself immune from civil liability.

Similarly, the Supreme Court of Wisconsin held that "a spouse who feloniously and intentionally kills his or her spouse is not a surviving spouse for purposes of the wrongful death statute, but instead is treated as though having predeceased the decedent." Steinbarth v. Johannes, 423 N.W.2d 540, 540 (Wis. 1988) (allowing adult children to bring wrongful death claim against stepfather who killed their mother). Like Florida, Wisconsin has statutes that prevent a killer from benefiting from the criminal act; the statutes direct that the killer must be treated as having predeceased the decedent. See id. at 542. The Wisconsin court was loath to permit "an absurd result by shielding the killer from civil liability," which would "contravene the strong and pervasive legislative policy of prohibiting a killer from benefiting from his or her criminal act." Id. at 542. The court also explained that a contrary construction of the statutes would thwart the purpose of the wrongful death statutes. Id. at 543.

Against this backdrop, we easily conclude that the right to recover damages for the wrongful death of a decedent under Florida's wrongful death law is an "interest" that, pursuant to section 732.802(4), must be treated as if the killer predeceased the decedent. Thus, the circuit court erred by ruling that Rodriguez was his wife's surviving spouse. In the absence of a surviving spouse, therefore, Cosman properly could assert her individual claim for damages as a survivor under the wrongful death law, section 768.21(3). Accordingly, we reverse the dismissal of her claim.

In addition, we reverse the final judgment on the Estate's claim. Rodriguez has a son, also from a previous relationship, and he called the son to testify.

- 5 -

The son is disabled in a way that called into question his competency as a witness. The trial court abused its discretion by refusing to allow Cosman to voir dire the son to ascertain whether he was competent to testify. See Palazzolo v. State, 754 So. 2d 731, 738 (Fla. 2d DCA 2000) ("When a party challenges the competency of a witness, the trial court should permit voir dire on the issue and make a case-specific determination of the witness's competency to testify."). On the witness stand, the son's testimony revealed that he had no understanding of what the proceeding was about or why he was there. The testimony was only marginally relevant at best; in large part, it was unintelligible and irrelevant.

It is apparent from our review of the record that the defense placed Rodriguez's son on the witness stand in order to elicit sympathy and confuse the jury. This purpose was made clear in closing argument by Rodriguez's attorney. After observing that the criminal justice system had worked and that Rodriguez was already being punished for his crime, counsel argued that "if punitive damages were to be awarded[,] who would be punished, who would suffer. Does the son have to pay for the sins of the father." This improper argument was unsupported by any evidence that Rodriguez was supporting his disabled son. And the error was magnified because the trial court had prevented Cosman from eliciting testimony to show that the son was also a beneficiary of Wanda's estate and that he would thus benefit from any recovery by the Estate in this lawsuit. We are confident that on retrial the court will ensure that the son, if called, is competent to testify and that he is allowed to provide only relevant testimony.

Reversed and remanded for a new trial.

VILLANTI and LaROSE, JJ., Concur.